James E. BUTLER, Plaintiff,

v.

Marion B. FOLSOM, Secretary of Health, Education and Welfare of the United States of America, Defendant.

Civ. A. No. 435.

United States District Court
W. D. Arkansas,
Harrison Division.

Nov. 20, 1958.

Len Jones, Harrison, Ark., for plaintiff.

Chas. W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

The plaintiff filed this suit on June 7, 1958, to review an adverse decision of the Secretary of Health, Education and Welfare on the plaintiff's claim for a period of disability and disability benefits under the Social Security Act, Title 42 U.S.C.A. §§ 416(i) and 423. Jurisdiction is vested in the district courts for review of such decisions under Title 42 U.S.C.A. § 405(g).

On November 22, 1955, the plaintiff filed application to establish a period of disability, and in due course the application was denied by the Bureau of Old Age and Survivors Insurance. The record does not reflect an application for disability insurance benefits, but the Referee in his written opinion, which is a part of the record, recites that such an application was filed on the date of the hearing and the complaint asserts a claim for the cash disability benefits as well as for the establishment of a period of disability.

Following the adverse determination of the Bureau, the plaintiff requested a hearing before a Referee and, after proper notice, such a hearing was held on December 12, 1957. On February 28, 1958, the Referee rendered his written opinion in which he concluded that the plaintiff's impairments were not of such a severe nature as to have prevented him from engaging in substantial gainful activity. Accordingly the Referee denied the plaintiff's claims for both the period of disability and the disability insurance benefits. On April 8, 1958, that decision was accepted by the Secretary of Health, Education and Welfare as his final decision, and within the required period the plaintiff filed this suit for review.

The defendant answered in due course, attaching to his answer a transcript of the administrative record, and on October 1, 1958, filed his motion for summary judgment and his brief in support thereof. Under Local Rule 8, the plaintiff had 10 days in which to file his brief in opposition to the defendant's motion for summary judgment. No brief was filed within the time prescribed, but since that time the court has repeatedly requested a brief in opposition to the defendant's motion, and although over a month has elapsed since the plaintiff's brief was due, none has yet been filed. However, on October 27, 1958, the plaintiff filed his motion to take additional testimony. Title 42 U.S.C.A. § 405(g), authorizes a remand of the case to the Secretary for the purpose of admitting additional testimony where good cause is shown.

The Referee's findings of fact and reasonable inferences therefrom must stand if supported by any substantial evidence. Bostick v. Folsom, D.C. W.D.Ark.1957, 157 F.Supp. 108; Fuller v. Folsom, D.C.W.D.Ark.1957, 155 F. Supp. 348. Secs. 416(i) and 423 are substantially identical, and a claim is established under those sections only by showing that the plaintiff has a medically determinable physical or mental impairment of such a nature that it can be expected to result in death or a disability of long-continued and indefinite duration which prevents the plaintiff from engaging in any substantial gainful activity. The burden of proof is upon the plaintiff to prove these conditions. Fuller v. Folsom, supra.

The plaintiff's testimony with respect to his disability is confined to a claim that he suffers from arthritis in his knee and hip and hardening of the arteries which prevent him from standing for any long period of time. During the war he served with the Seabees, and prior to that worked for approximately 12 years as a carpenter. Following his discharge he worked as a meat cutter in retail markets. In March of 1952 he gave up working altogether, complaining that he was unable

to stand. He asserts that a walk of several blocks completely tires him and that he does nothing around his home except to mow the grass. He has sought no employment since March of 1952.

The medical evidence in the record consists of some five reports by the Veterans Administration released at the plaintiff's request and the reports of Dr. R. B. Drew and Dr. A. V. Adams. The reports of the Veterans Administration, made at various times beginning in September 1955, when the plaintiff was hospitalized in Veterans hospitals, are substantially similar. The most recent report was completed May 11, 1957, on the basis of examination of the plaintiff during his hospitalization for the preceding 30 days. The examining physicians made diagnoses as follows:

"Diagnosis #1. Osteomalacia, with early degenerative arthritic crepitus, knees, symptomatic on left — treated, sl. improved.

2. Conversion reaction, chronic manifested by persistent physical complaints — treated, unchanged.

3. Malnutrition, chronic, mild — treated, improved.

4. Varicose veins, lower extremities — untreated, unchanged.

5. Absence, ¾ distal phalanx, left middle finger — untreated, unchanged.

6. Spermatocele, small, left — untreated, unchanged."

(TR. 71)

———◆———

The report indicates the therapy as follows:

"Course: Therapy included Pabalate; APC's p.r.n. (ASA had reportedly caused constipation); Multivitamins with added Vitamin E; B–12 and Thiamin I.M.; Tolserol; high protein, high caloric, high vitamin diet; bed board; physiotherapy with infra-red daily to painful areas. Individual psychotherapy was given by the Clinical Psychologist, whose impression was chronic conversion reaction and, to some degree, inadequate personality. Orthopedic consultation noted minimal physical findings of any disability. Subject was thought to have a low-grade osteomalacia with early degenerative arthritic crepitus in both knees, subjectively disturbing on left, compatible with age. Findings of a herniated disc were not elicited. It was the opinion of the Orthopedic Specialist that this man represents primarily a personality behavior case, rather than a true case of arthritis. He injected, however, 1 cc Hydrocortone in each infrapatellar fat pad as a palliative. G. U. consultation noted impression of small spermatocele, left, of no clinical significance. Patient at times admitted improvement in pain in left hip or knee or in both these parts. At other times both hip and knee were claimed to bother. The knee pain was emphasized particularly for the most part. Pains were usually claimed to be most conspicuous at night, relieved at least partially by APC's. Following Hydrocortone injection he admitted that left knee was better but within another 24 hours he complained again of pain in this part, as well as of interval pain in left hip. Chronic

complaints in this case dating from April 1944 have to date been resistant for the most part to various types of treatment. There was a weight gain of 6 pounds. He was advised to continue on complete nourishing diet; bed board; APC's 2 q. * * * p.r.n. for much pain; Multivitamins which he had been taking previously on VA prescription. Discharged MMB 5/11/57." (TR. 70–71)

The diagnoses and findings in this report are substantially similar to those in the preceding four examinations by the Veterans Administration doctors, most of which contain a consistent diagnosis of "conversion reaction" or hysteria. There appears to be some difference of opinion at various times among the Veterans Administration physicians as to whether or not the plaintiff was suffering from arthritis, although the latest report, as quoted, does indicate an "early degenerative arthritic crepitus in both knees, subjectively disturbing on left, compatible with age."

The report of Dr. R. V. Drew, dated August 13, 1956, (TR. 54–55) indicates that he made no X-rays, but with respect to arthritis he states: "Lumbar region of the back, both knee joints and wrist joints are involved." He indicates by an appropriate check mark on a form furnished by the Bureau that the plaintiff was suffering from a marked cardiac limitation. No explanations or comments were furnished in this regard. He makes no diagnosis in the appropriate part of the form but indicates that he advised the plaintiff not to work.

The report of Dr. A. V. Adams (TR. 59–60) dated August 14, 1956, also diagnoses arthritis but indicates that he made no X-rays, and was basing his opinion upon information he had obtained as to the Veterans Administration X-rays. He comments that the plaintiff has not been able to carry on a gainful occupation since 1945.

Although the reports of Drs. Drew and Adams indicate their diagnoses of arthritis were not based upon X-rays which they made or examined, their conclusions are substantially in accord with those of the Veterans Administration physicians and all agree that the plaintiff is suffering to some extent from arthritis. The Veterans Administration concluded that the impairment was moderate, whereas Drs. Drew and Adams apparently concluded that it was severe.

■ The Referee, as trier of fact, was entitled to accept the view of the Veterans Administration which is based upon thorough and repeated examinations of the plaintiff, that the plaintiff's impairment was not disabling to the extent that he was unable to engage in any substantial gainful activity. Although the claimant in his oral testimony predicated his claim solely upon his inablity to stand due to the alleged arthritic condition of his knee, the Referee gave full consideration to all of the conditions diagnosed by both the Veterans Administration and Drs. Adams and Drew. The Referee said in his written decision:

"From a careful analysis of all the evidence in this case it does not appear that claimant's impairments, either singly or in combination, have been of such severity as to continuously prevent him from engaging in any substantial gainful work from a time when he met the earnings requirements. The diagnoses made from examinations during various periods of hospitalization in Veterans Administration hospitals do not represent, based upon the clinical findings from which the diagnoses were made, impairments of such severity as to qualify claimant under his application. Osteomalacia is usually subject to cure by adequate intake of minerals and vitamins and some improvement was indicated in the last medical report from the Veterans Administration hospital. Also prescribed use of minerals and vitamins and proper diet should remedy this condition as well as the indicated malnutrition which was characterized as mild and improved. Neither of these conditions are described

in the medical reports as disabling. In May 1955, an examiner was very specific in his finding that there was no orthopedic disease or disability and a prior diagnosis of arthritis was repudiated. Also no herniated nucleus pulposus was found. In view of these findings and since the reports of both Drs. Adams and Drew as to arthritis diagnosis are based upon the Veterans Administration hospital reports there is no clinical basis for a finding of disability from arthritis. It is also apparent from the evidence as a whole that there is no convincing proof of an arthritic impairment of such severe nature as to qualify the claimant on this complaint. The spermatole is designated as small and treatment was not indicated. In any event it may be removed by surgery with no threat to the claimant's health. The reports in reference to the conversion reaction noted the estimated incapacity as moderate. There are no accompanying demonstrations of physical incapacities of such severity as to warrant a finding that this condition, first noted in 1955, is now disabling, and it does not appear that this condition developed during the period within which the claimant met the earnings requirements. There being no clinical finding by either of the Drs. Adams or Drew to substantiate a classification of a Class III heart and anything in the evidence to indicate a severe heart impairment it must be determined, and the referee so finds, that claimant's alleged impairments, either singly or in combination, are not of such severe nature or have continuously prevented claimant from any substantial gainful activity for the period necessary to qualify him under his application." (TR. 12)

The Referee did not base his conclusion upon any theory that the plaintiff's impairment was purely subjective. In other words, the Referee apparently gave full weight to any impairment which might have arisen by virtue of what the Veterans Administration diagnosed as "conversion reaction" or hysteria. In short, the Referee did not treat the plaintiff's impairment as being any less disabling because it was based in whole or in part upon a subjective or neurotic symptom. Thus, the plaintiff was given the full benefit of any doubt which might have been created by the diagnosis of chronic conversion reaction and hysteria.

The conflict between the estimates of Drs. Drew and Adams and the estimate of the Veterans Administration with respect to the plaintiff's impairment are conflicts which the Referee was entitled to resolve, especially in view of the considerably more thorough examination by the Veterans Administration and in view of the complete lack of clinical findings shown in the reports of Drs. Drew and Adams. Had the Referee reached any other conclusion, it would have been subject to serious attack as being speculative. There is substantial evidence to support the Referee's findings and conclusion, and it must be sustained.

The defendant's motion for summary judgment must, therefore, be granted unless the case is remanded to the Secretary for the receipt of additional evidence in accordance with the plaintiff's motion. Title 42 U.S.C.A. § 405(g), provides for a remand for the purpose of admitting new evidence where good cause is shown. Because administrative hearings in this field are informal and nonadversary, such a strict showing of good cause as might be required in other cases should not be required. Wray v. Folsom, D.C.W.D.Ark.1958, 166 F.Supp. 390; Hallard v. Fleming, D.C.W.D.Ark.1958, 167 F.Supp. 205. The plaintiff's motion sets out as grounds for such a remand here that the plaintiff was not represented by an attorney in the administrative hearing, that the defendant received additional time to file an answer, and that "it is the belief of the plaintiff" that he can produce additional lay and medical testimony which will better show the plaintiff's true condition. While the standard of good cause should be liberal for the purpose of allowing a

remand to the nonadversary administrative hearing some showing of good cause must be made. The mere fact that the plaintiff was not represented in the administrative hearing by an attorney is not itself sufficient to admit new evidence since the plaintiff is chargeable with meeting his burden of proof whether he is represented by counsel or not. Wray v. Folsom, supra. Although the defendant was granted additional time in which to file his answer in this suit, that fact can have no bearing whatever upon the plaintiff's burden of proof in the administrative hearing and may not be considered as any ground for ordering the admission of additional testimony here.

The plaintiff also alleges in his motion for additional testimony that it is his "belief" that additional lay and medical evidence could be introduced to better show the true condition of the plaintiff's health. In Hallard v. Fleming, supra, this court said:

"Unless there is an inherent error in the decision of the Secretary or the proceedings in the administrative hearing, it would be necessary to apprise the court at least of the general nature of the proof the plaintiff would like to introduce before the court could be justified in remanding for the submission of new evidence. The plaintiff here does not indicate what new evidence he wishes to introduce, if any."

Although this case may not have been as fully developed in the administrative hearing as the Hallard case just quoted, there are seven medical reports in evidence, some of which were based on examination over a period of several weeks, and most of which are several pages long. The medical examinations appear to have thoroughly explored the plaintiff's various complaints. Without a showing, therefore, of the specific purport of the desired additional testimony, the plaintiff's motion does not show good cause for a remand.

The Referee's decision having been based upon substantial evidence in the record, and no good cause having been shown by the plaintiff on his motion to remand, the defendant's motion for summary judgment must be sustained, and the plaintiff's motion to remand must be denied.

Therefore, an order is being entered today sustaining the defendant's motion for summary judgment and denying the plaintiff's motion to remand for additional testimony.